799 P.2d 129

**In the Matter of Joseph M. TAPIA, Jr., An Attorney Suspended from Practice before the Courts of the State of New Mexico.**

**No. 18414.**

Supreme Court of New Mexico.

Oct. 10, 1990.

**694**

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

David L. Norvell, Albuquerque, for respondent.

## OPINION

PER CURIAM.

This matter is before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 through 17–316 (Repl. Pamp.1988 & Cum.Supp.1990), wherein the Disciplinary Board recommended that attorney Joseph M. Tapia, Jr., be disbarred for acts of misconduct committed in violation of the Rules of Professional Conduct,

SCRA 1986, 16–101 through 16–805 (Repl. Pamp.1988 & Cum.Supp.1990). Additionally, in connection with an unrelated suspension from the practice of law, the Court has considered Tapia's petition for reinstatement to practice on probationary status filed pursuant to Rule 17–214(B)(2). We deny Tapia's request for probationary reinstatement and adopt the findings and conclusions of the Disciplinary Board. For reasons set forth below, we modify the Board's recommendation of disbarment and extend Tapia's indefinite suspension from the practice of law for an additional minimum period of at least one (1) year pursuant to Rule 17–206(A)(3).

On July 12, 1989, this Court entered an order suspending Tapia from the practice of law for an indefinite period of at least two (2) years pursuant to Rule 17–206(A)(3), effective July 22, 1989, but deferred the imposition of all but one (1) year of actual suspension. *See Matter of Tapia,* 108 N.M. 650, 777 P.2d 378 (1989). We ordered that Tapia could be reinstated to practice on a probationary status as of July 22, 1990, provided he could show that he had made restitution to the mother of a client and had taken and passed the Multistate Professional Responsibility Examination. It was further ordered that, upon a showing by an attorney appointed to inventory Tapia's files pursuant to Rule 17–213(A) that any of Tapia's clients were entitled to refunds of fees paid in advance, the Court could order the payment of these amounts to the clients as an additional precondition to his reinstatement on a probationary status. On December 7, 1989, Tapia was ordered to reimburse various clients in the aggregate amount of $30,-084.30 plus interest on any amounts not paid within ten (10) days of our order.

While Tapia has been shown to be in compliance with the provisions of the 1989 order, it now appears that, following his suspension from the practice of law, many of his former clients filed complaints with the office of disciplinary counsel alleging acts by Tapia which appeared to violate the Rules of Professional Conduct. Tapia was notified of these complaints but failed to

respond in any way to disciplinary counsel's requests for information. Pursuant to the requirement of Rule 17–307(B), that all doubts regarding allegations of attorney misconduct shall be resolved in favor of conducting a formal hearing, additional charges of misconduct were filed against Tapia on September 8, 1989. Tapia was served with the charges on September 15, and his answer was due on October 5, 1989.

On October 5, an attorney entered his limited appearance on Tapia's behalf solely to challenge the qualifications of two of the hearing committee members pursuant to Rule 17–309(C)(5). The motion to disqualify was properly denied by the committee on October 17, 1989, and notice of the denial sent to both Tapia and his attorney; both were advised that Tapia's time to answer the specification of charges would be extended to October 27, 1989. No answer or denial of the charges was ever filed, and the charges were deemed admitted pursuant to the provisions of Rule 17–310(C). The hearing was limited to a consideration of factors in aggravation and mitigation of the misconduct.

The acts of misconduct with which Tapia is charged in this case appear to be similar to the acts of neglect and failure to communicate with clients which led to his current suspension. In one instance, Tapia is charged with accepting $2,500 from Frances Trujillo in February 1989 to represent her son in criminal proceedings, and with failing to contact his client or to take any discernible action on his client's behalf. When he was suspended from practice, it is purported that Tapia failed to notify his client or to provide an accounting and refund of the unearned portion of the fee. Such conduct would violate Rules 16–101, 16–103, 16–104(A), 16–104(B), 16–105, 16–116(A)(1), 16–116(D), 16–804(D), and 16–804(H).

In another instance, Tapia is charged with having been paid $4,000 to represent Mark Coriz in a criminal matter and with having provided no services whatsoever. Additionally, it is charged that he misinformed his client that a scheduled hearing had been cancelled. When Coriz relied upon this information and failed to appear, a warrant was issued for his arrest. When Coriz was released from jail, he discharged Tapia as his attorney and was promised a partial refund; the refund was not paid, however. Tapia's behavior in this case would violate Rules 16–101, 16–103, 16–104(A), 16–105, 16–116(D), 16–804(C), 16–804(D) and 16–804(H).

In a third matter, it is charged that Tapia was to have prepared a will for Lilly Archuleta but failed to do so. When Ms. Archuleta died in December 1988, her sister Nellie Avila is purported to have contacted Tapia and to have been advised that he needed $2,500 to "finish the papers." Upon receiving the money from Avila, Tapia is charged with suggesting to her that she should forge her sister's name on the unexecuted will. Avila did not do so. Through counsel representing him before this Court Tapia categorically denies having suggested forgery, and admits that disbarment would be the only appropriate sanction for such dishonest conduct, if true. It is also charged that Tapia took no action with regard to the probate and avoided Avila's calls, that he never advised Avila of his suspension, did not forward the probate file to her, and refunded none of the $2,500. Tapia thus would have committed violations of Rules 16–101, 16–102(D), 16–103, 16–104(A), 16–105, 16–116(D), 16–804(D) and 16–804(H).

Finally, it is charged Tapia agreed to represent Lillian Valdez Brooks in an appeal before this Court filed by the defendant-appellant contesting a judgment awarded to Brooks in the amount of $133,-000. He purportedly accepted $1,000 from Brooks but missed the deadline for filing her answer brief despite numerous calls to him from Brooks and assurances to her that he was handling the matter. Several weeks after the brief was due, Tapia entered his appearance on behalf of Brooks and requested an extension of time to file a brief on her behalf. An extension was granted, but Tapia missed this deadline as well. When he attempted to file the brief several months after the deadline had passed, he was correctly advised by the Clerk of this Court that it could not be

accepted for filing unless accompanied by a motion for leave of the Court to permit its late filing. No such motion was ever submitted by Tapia, and Brooks' brief was never filed. The Court had before it only the defendant-appellant's brief and ruled in favor of the appellant. In this instance, Tapia would have violated Rules 16–101, 16–103, 16–104(A), 16–105, 16–804(D), and 16–804(H).

In addition to these acts of misconduct, the hearing committee and the Disciplinary Board found numerous factors in aggravation of Tapia's conduct. *See* American Bar Association, *Standards for Imposing Lawyer Sanctions* 9.2 (1986). Tapia has a long history of neglect and failure to communicate with clients dating back to at least 1986, when he was formally reprimanded for such conduct. His failure to cooperate in any way with the attorney appointed by this Court to inventory his open files at the time of his suspension in 1989 was viewed by the committee and the Board as violative of the terms of a prior disciplinary order. Tapia's taking money from clients but failing to provide services was seen as indicative of selfish motivation. It was determined that Tapia has shown a pattern of misconduct and has committed multiple offenses against persons in highly vulnerable circumstances. It was further noted that he has given no indication that he either recognizes that his actions (and inactions) were unacceptable or that he feels any remorse whatsoever for the damage he did to his clients.

The committee and the Board also found that during the course of these proceedings Tapia intentionally failed to comply with the rules of the disciplinary agency. This finding was supported by the testimony of Tapia's treating psychiatrist, who stated that while Tapia had some emotional and personality problems which had been and should continue to be addressed in therapy, these problems were not the cause of his failures to respond to inquiries from disciplinary counsel or file responsive pleadings with the hearing committee in a timely fashion. These omissions, according to the doctor, were the result of a conscious decision by Tapia not to cooperate.

As a single mitigating factor, the Board found that Tapia was experiencing personal and emotional problems at the time he was engaging in this misconduct. *Id.* at 9.32(c). The Board also has noted that Tapia had made efforts at restitution in accordance with this Court's previous orders. (Prior to the hearing before this Court, all previously ordered restitution was paid in full.) This fact, however, was viewed as neither an aggravating nor a mitigating factor. *Id.* at 9.4(a).

Tapia argued to this Court that he should be reinstated on a probationary basis, since he had complied with all of the preconditions for reinstatement previously ordered, and that due process would require us to remand the present matter to the hearing committee for a full hearing on the factual allegations. He claimed that the attorney who entered his appearance on a limited basis had in fact been his attorney for all purposes, and had made a tactical error in not filing an answer because he could have defended against the allegations.

■ We note that even after this attorney formally withdrew on the record at the first hearing held in this matter, Tapia filed no motion to set aside the finding that he was in default or any other pleading in which he denied the factual allegations or indicated that he had a meritorious defense. For good cause shown, the hearing committee (or the Board) could have set aside the finding of default pursuant to Rules 1–055(C) and 1–060. Given the absence of appropriate pleadings filed in accordance with these rules, however, the matter will not now be remanded simply on the basis of Tapia's unsubstantiated claims that he disagreed with his former attorney's strategy and that he could have successfully defended against the charges of misconduct. To hold otherwise would be to sanction non-compliance with procedural rules and encourage endless litigation on the basis of a retrospective determination that one's strategy might have been ill-advised.

■ While we are deeply disturbed that Tapia is once again before this Court

in a disciplinary matter and agree with the Disciplinary Board that additional sanctions are warranted, we must bear in mind that the purpose of an attorney discipline is not to punish attorneys for past wrongs or to prevent them from ever again using their training and skills to serve the public. Where there is some evidence, as there is in this case, that factors over which an attorney had no control may have contributed to the misconduct or that rehabilitation could be effected, then we hesitate to impose the ultimate sanction of disbarment. We prefer instead to continue Tapia's present suspension for at the very least one additional year in the hope that he will utilize this time in an effort to reflect upon what may have caused his egregious conduct and to take whatever steps are necessary to enable him to demonstrate at a reinstatement proceeding that the problems experienced by his former clients would not be likely to recur.

IT IS THEREFORE ORDERED that the suspension of Joseph M. Tapia, Jr., from the practice of law is hereby continued for an additional indefinite period of at least one (1) year pursuant to SCRA 1986, 17–206(A)(3).

IT IS FURTHER ORDERED that Tapia may not petition to this Court for reinstatement until September 12, 1991, and that his reinstatement will not be automatic but will occur only after proceedings conducted pursuant to SCRA 1986, 17–214(B)(2) and 17–214(D), wherein he will have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications and is once again fit to resume the practice of law without detriment to the integrity and standing of the bar, the administration of justice, or the public interest. Should Tapia make such a showing, his reinstatement will be on a probationary basis subject to the terms and conditions previously ordered and any additional terms and conditions deemed appropriate.

Costs of these proceedings in the amount of $1,173.77 are hereby assessed against Tapia and must be paid to the Disciplinary Board prior to any application for reinstatement.

IT IS SO ORDERED.

SOSA, C.J., not participating.